UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       v.

ANDREW CROWELL,

       Defendant.

07-CR-194-S

**SENTENCING MEMORANDUM**

## INTRODUCTION

       The defendant, Andrew Crowell, submits this memorandum, along with the attached letters from family and friends, for the Court's consideration at sentencing:

| | |
|---|---|
| Exhibit A | Defendant's letter |
| Exhibit B | Paul Defenbaugh, defendant's domestic partner |
| Exhibit C | Rebecca Crowell Reddy, defendant's mother |
| Exhibit D | Donald Karl Crowell, defendant's father |
| Exhibit E | Lisa D. Harnett, defendant's step-sister |
| Exhibit F | Helen Pate-Bain, defendant's cousin |
| Exhibit G | Kurt Doles, defendant's friend |
| Exhibit H | Randall Hugh Holder, defendant's friend |
| Exhibit I | Simon Shak, defendant's friend |
| Exhibit J | Kevin M. Kennedy, defendant's friend |
| Exhibit K | Wink R. Vaughn, defendant's friend |
| Exhibit L | Doreen Kamada-Fujii, defendant's friend |

| | |
|---|---|
| Exhibit M | Martin Gauffin, defendant's friend |
| Exhibit N | CD -- sample of Andrew Crowell's musical compositions |

For the following reasons, consistent with the plea agreement with the government, we respectfully ask this Court to impose a sentence at the low end of the advisory Guidelines range.

**PROCEDURAL HISTORY**

On May 23, 2006, Mr. Crowell was traveling from Illinois to Toronto, Ontario, to perform in a musical concert at a venue called Hacienda on Bathurst Street. On that date, he crossed the Lewiston-Queenston Bridge and was referred to secondary inspection by the Canadian Customs officials. During secondary inspection, his laptop computer was searched and the images in question were found. As discussed in more detail below, these images had been downloaded by Mr. Crowell during a period of clinical depression in the late 1990s and were never deleted.

Mr. Crowell was initially arrested and charged in the Ontario Court of Justice. However, on or about September 27, 2006, those charges were dismissed and he was returned to the United States and taken into custody for the same offense. He appeared before then United States Magistrate Judge Leslie G. Foschio and was released on secured bail with supervision and other pretrial conditions.

On August 8, 2007, Mr. Crowell appeared before this Court and pled guilty to a one-count Information charging with possessing images of child pornography in violation of 18

U.S.C. § 2252A(a)(5)(B).  A presentence investigation has been conducted.  In both the plea agreement and the PSR, the parties have agreed that the total adjusted offense level in this case is 27.  As Mr. Crowell has never had any prior contact with law enforcement, much less a conviction, his Criminal History Category is I, with a resulting advisory sentencing guidelines range of 70 to 87 months.  Under the terms of the plea agreement, Mr. Crowell agreed not to request a sentence outside this advisory range.  Sentencing is now set for December 6, 2007 at 9:00 a.m.

**ARGUMENT**

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the United States Supreme Court rendered the United States Sentencing Guidelines advisory.  The Second Circuit has instructed that, although advisory, the sentencing court must still calculate the appropriate sentencing range under the guidelines, including any departure provisions.  <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005).  Once an applicable guidelines range has been determined, the sentencing judge will have the duty, imposed by section 3553(a)(4), to "'consider' it, along with all of the factors listed in section 3553(a)."  <u>Id</u>.  This Court must give due consideration to the factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary."  These factors are as follows:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)  the need for the sentence imposed --
>     (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B)  to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [by the Sentencing Guidelines] . . .;
> (5) any pertinent policy statement -- . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Pursuant to this mandate, this Court is respectfully asked to consider the following information when imposing sentence in this matter.

### SENTENCING FACTORS

**A.   Andrew Crowell's Life Long Battle with Bipolar Disorder, and Possibly Asperger's Syndrome, Underlies His Involvement with the Instant Offense**

Andrew Crowell is 46 years old. He was born on November 27, 1961 to Donald Karl Crowell and Rebecca Reddy. His parents were married at the time and raised him together until their divorce when Mr. Crowell was approximately 16 years old.

Rebecca Reddy advises that Andrew was a very precocious child. He was able to read by the age of 2. At age 4, Mrs. Reddy had him tested at the Peabody's Child Study Center and was told that his reading and comprehension skills were already at a high school level.[1]

---

[1]   Mrs. Reddy advises, both in her letter to this Court and in many conversations with defense counsel, that Andrew's special talents prompted her to continue her own education in special education, in order to better understand early childhood development and how to teach kids who were "different." The instructions she

(continued...)

Being gifted made school difficult for Mr. Crowell. While he was more than capable of doing the academic work, his ability to relate with his peers was limited. He had difficulty making friends, was ostracized, and, in high school, experienced some bullying. It was also while he was in high school that his parents separated as a result of his father's infidelity. Shortly after the divorce, Mr. Crowell became estranged from his father. This rife lasted many years. In fact, the two reconciled only recently.

In high school, Mr. Crowell struggled with mental health issues, experiencing significant bouts of depression. In eleventh grade, he suffered a nervous breakdown and had to finished the academic year at home. Mr. Crowell's parents immediately sought mental health intervention on his behalf and he was treated by Dr. Charles Corbin for about one year. Dr. Corbin's diagnosis at that time was severe depression from the loss of his relationship with his father.

The following year, Mr. Crowell enrolled in college at St. Peterburg, Florida. However, he began experiencing depression and anxiety, and suffered a second breakdown while in his first year at college. He returned home. He then enrolled at Middle Tennessee State University at Murfreesboro, eventually earning his Bachelor's of Music and Music Theory Composition in December 1988. While at Middle Tennessee State, Mr. Crowell participated in counseling at their Counseling Center. At that time, he was prescribed medication to address his depression, which greatly stabilized his condition.

---

[1](...continued)
received did not necessarily focus solely on teaching the gifted, but she believes it gave her the tools to do the best she could for her son. She ultimately spent her career teaching the blind at the Tennessee School for the Blind.

After earning his Bachelor's Degree, Mr. Crowell enrolled with the University of Tennessee at Knoxville and began working towards a Master's Degree in Music Composition. While there, he suffered another mental breakdown. At that time (approximately 1991), he was diagnosed for the first time with bipolar disorder. Mr. Crowell was prescribed Prozac and Lithium. Again, medication and counseling helped to stabilize his condition, although as a struggling musician, he was not always able to afford his prescriptions.

In 2000, when Mr. Crowell began experiencing manic episodes, he sought mental health treatment at the Community Resource and Counseling Center near his home in Rankin, Illinois. Mr. Crowell has been in active treatment with this agency ever since. Initially, in 2001, he was diagnosed with Bipolar Disorder Type II and prescribed Wellbutrin SR and Ambien.

Around the same time, Mr. Crowell was also diagnosed with Asperger's Syndrome by Dr. Sandra Burkhart in Chicago, Illinois. Asperger's Syndrome is a mild form of Autism that impacts one's social and occupational functions. Not all of Mr. Crowell's psychologists have agreed with this diagnosis, but as the Court will read in the attached letters, it is this condition that makes the most sense to Mr. Crowell's family and friends. It better explains some of his peculiar (though in no way dangerous) personality traits. Mr. Crowell's current diagnoses is: Bipolar Disorder, most recent episode depressed, without psychotic features; Primary Insomnia; and Post-Traumatic Stress Disorder, chronic-type with delayed onset. He is currently taking Seroquel, Propranolol and Halcion and continues to benefit from counseling and medication.

This background is important as it was during an unmedicated period of time in the late 1990s that Mr. Crowell downloaded the images that underlie the offense conduct in this case.

Mr. Crowell explains that without his medication, he was in a severe depressive state and was, in essence, exploring the underbelly of the Internet. He was not looking at these images for sexual gratification and, indeed, denies any sexual interest in children. Notably, the number of images involving children pales in comparison to the number of files on the computer containing other material, including adult pornography, and anime (computer assisted animation). Nonetheless, Mr. Crowell understands the seriousness of his offense in possessing these images and offers this information only to put his conduct in context. He truly regrets his actions and accepts full responsibility for them.

**B.     Andrew Crowell's Personal History and Characteristics Support a Sentence at the Low End of the Sentencing Guidelines Range**

   **1.     Andrew Crowell Is a Talented and Accomplished Composer of Ambient Music**

Andrew Crowell's passion is music. He is an accomplished professional composer in the genre of Ambient music. Ambient music is an electroacoustic medium, the composition of which is done with the use of computer software. Each sound is created and arranged by the composer. Mr. Crowell's work has an almost meditative quality. A CD containing a sample of his work has been filed separately for the Court's review as Exhibit N.

Mr. Crowell's love of music started as early as age 3; he began composing his own work as a teen. Mr. Crowell has earned a Bachelor's of Music in Music Theory and Composition from Middle Tennessee State University. Additionally, he has earned a number of credits towards his Master's Degree from both the University of Tennessee at Knoxville and the University of Illinois at Urbana-Champaign. Mr. Crowell has studied under a number of noteworthy avant-

garde composers such as Salvatore Martirano, Karlheinz Stockhausen and John Anthony Lennon.

Mr. Crowell became a member of Phi Mu Alpha, a fraternity for musical professionals founded in 1898, while in graduate school.  He continues to volunteer, helping to raise money and organize initiation ceremonies.

Mr. Crowell has worked as a struggling musician his entire adult life, with some degree of success.  Since 1994, he and his business partner, Dr. Lester Savage, have operated Aerodyne Works, a music studio located in Mr. Crowell's home.  Through his studies, he has crafted over a dozen compilations of work and helped others record their work.  Mr. Crowell's music is marketed through www.magnatune.com/artists/dac_crowell.  He also maintained part-time employment at WILL Radio as a radio operator from June 1999 until his arrest for the instant offense in May 2006 when he was terminated.

A number of Mr. Crowell's friends from the music world have written letters for the Court's consideration.  One such individual, Kurt Doles, is the Coordinator of Operations at the MidAmerican Center for Contemporary Music at Bolling Green State University in Ohio (see Exhibit G).  He advises that Mr. Crowell has greatly influenced his development as a composer, performer and as a teacher.  They have collaborated on more than a dozen projects together.  He advises Mr. Crowell has generously edited some of his work, as well as dedicated time to helping some of his students raise money for the musical fraternity.  In 2000, Mr. Crowell had an installation piece at the MidAmerican Center for Contemporary Music Festival at Bolling Green.

Mr. Crowell has also generously shared his vast knowledge and understanding of music with his friend, Kevin Kennedy, a fellow musician who has known Andrew for the last 12 years (see Kennedy letter at Exhibit J). Mr. Kennedy credits Mr. Crowell's assistance with his own growth as a musician. The same is true for Doreen Kamada-Fujii, whose letter describes the depth and breadth of Mr. Crowell's musical knowledge and his selfless generosity in sharing that knowledge and talent with her (Exhibit L).

### 2. Andrew Crowell is a committed Jodo Shinshu Buddhist

Andrew is also a committed Jodo Shinshu Buddhist. Although he first studied Buddhist philosophy as a teenager, he was introduced to Jodo Shinshu, or Shin Buddhism, in 2001 by his friend Doreen Kamada-Fujii. In 2002, he joined the Midwest Buddhist Temple in Chicago and trained to become a Lay Dharma leader.

In her letter, Ms. Kamada-Fujii describes Andrew's study of this religious sect, as well as his musical talent (Exhibit L). Although she had been raised as a Jodo Shinshu Buddhist since childhood, it was through Andrew's exploration of their religion that she found deeper meaning in her faith. In her letter, she quotes at length the first Dharma message Andrew delivered after completing his Lay Dharma Leader training in October 2003. She was also familiar with Andrew's work as a composer, as she is a musician herself. As a parent, she understands the serious nature of this offense. She believes Mr. Crowell acquired these images almost a decade ago, during a dark period of untreated depression. Given Mr. Crowell's commitment to the basic tenets of their faith, she firmly believes that he would never actually harm a child or she would not be supporting him now.

### 3. Andrew Crowell has the Unwavering Support of his Family and Friends

Mr. Crowell also has tremendous support from his family and friends. He has been in a committed relationship with his domestic partner, Paul Defenbaugh, for the last 17 years. They live together in a home owned by Mr. Defenbaugh. In Mr. Defenbaugh's letter to this Court (Exhibit B), he reaffirms his commitment and love for Mr. Crowell. He advises that Andrew is an intelligent, well-meaning person, whose greatest passion is to perform and create music. He believes Andrew to be honest to a fault and finds that he always takes responsibility for his actions when he is wrong. He is a loyal and committed friend who is always ready to help others.

Mr. Defenbaugh has known Andrew for close to two decades, and it is his firm belief that his possession of the images that underlie this offense was totally out of character and a gross, one-time, error in judgment. He attributes the fact that Andrew kept the images to his mental health issues, including the diagnosis of Asperger's Syndrome. Regardless of the name of the condition, Mr. Defenbaugh confirms that Andrew has many quirky behaviors, including hoarding. In the 17 years that he has known him, he has never had the ability to throw out or get rid of any items he comes across. Acknowledging that downloading and then keeping the images in question was wrong, it is Mr. Defenbaugh's firm belief that this was done, not out of sexual interest in images, but rather as a symptom of Andrew's hoarding tendencies. He is adamant in his belief that Andrew would never harm a child.

Despite a challenging and, at times difficult childhood, Andrew Crowell also has the love and support of his parents. His mother, Rebecca Reddy, has written a letter for this Court's consideration (see Exhibit C). She describes Andrew as an intelligent and gifted individual. She

loves her son and believes that he would never do anything to harm a child. She believes that the instant offense is indicative of his bipolar disorder or possibly Asperger's Syndrome and notes a family history of depression and compulsion behavior. She confirms that Andrew has hoarding tendencies -- as a family trait -- which explains his maintenance of the images on his computer. Ms. Reddy is absolutely distraught over her son's current situation. Her concerns run the gamut: for his physical well-being while incarcerated; for the stability of his mental health; for his ability to maintain his new-found relationship with his father and his father's second family; for his ability to return to what will be left of his music business after his release from jail; and for her loss of his support while he is incarcerated. She is extremely concerned, given Andrew's pacifist nature and demeanor, that he will be victimized while incarcerated.

As noted, Andrew has recently reconciled with his father, Donald Karl Crowell, after an almost thirty-year estrangement. The senior Mr. Crowell regrets the years that have gone by (see Exhibit D). He describes Andrew as a gentle and peaceful child with a love for animals. Since their reunion, he finds Andrew's temperament to be exactly the same as he remembered. He advises that his son was extremely bright and that they were able to converse on many subjects while Andrew was still very young. He recognizes the seriousness of Andrew's offense, but asks the Court to consider their newly rekindled relationship in imposing sentence. Having lost so much time, he is concerned that he will lose even more while Andrew is incarcerated. Donald Crowell suffers from a number of health issues, including diabetes, which limits his ability to walk. Not only will this condition possibly preclude him from visiting Andrew while he is incarcerated, he is concerned that he has little time left to spend with his son.

Mr. Crowell's extended family and friends were universally shocked when he was arrested and charged with the instant offense. They are also unanimously certain that he would never harm a child and have expressed these sentiments and their concern for Andrew's safety and mental health while incarcerated.

For instance, Mr. Crowell's step-sister, Lisa Harnett, describes Mr. Crowell in her letter as loving, giving and hard-working (see Exhibit E). She advises that he is passionate about his music and compassionate toward all living creatures. She was shocked to learn the nature of his offense as it is completely out of character.

Similarly, Simon Shak, Andrew and Paul's roommate, expresses his disbelief at Andrew's current situation in his letter to this Court (see Exhibit I). He too is a Shin Buddhist and confirms Andrew's dedication to their faith. It is his firm belief that Andrew's involvement in the instant offense was the product of a period of depression. He advises that Andrew has been seeking mental health treatment and medication and is committed to that process. It has been his observation, living with Andrew, that Mr. Crowell has suffered greatly since his arrest, experiencing significant anxiety and advises that Andrew is truly remorseful.

Finally, Mr. Crowell's friend, Martin Gauffin, has submitted a letter for this Court's consideration. Mr. Gauffin is Swedish and English is not his first language. Although his letter is awkwardly written, it has been submitted for consideration because of the sentiment expressed therein. Mr. Gauffin advises that he suffers from Multiple Sclerosis and, due to complications, was in a coma or semi-conscious state for nearly eight years. When he awoke, he found many of the people he had previously relied upon for support had gone their separate ways, but not

AO 72A
(Rev. 8/82)

-12-

Andrew Crowell.  Mr. Crowell was still there supporting him, never losing faith or losing respect for him as a person.  Mr. Gauffin's gratitude is not lost in translation and his letter speaks to Andrew Crowell's generous and compassionate nature and his selfless loyalty to friends and family.

### 4.    Andrew Crowell is Deeply Remorseful for His Involvement in the Instant Offense

Mr. Crowell not only provided a statement to the arresting officers and the Probation Officer when preparing his presentence report, he has also submitted a letter for this Court's consideration at sentencing (Exhibit A), fully accepting responsibility for his actions in this case.  In his letter, he outlines his battle with clinical depression and bipolar disorder, and possible Asperger's Syndrome, again, noting that it was during a period of depression that he acquired the images involved in this offense.  Since that time, Mr. Crowell has actively participated in counseling and believes that the medication prescribed has greatly helped him.  Additionally, his spiritual growth through Jodo Shinshu has also given him greater clarity, control and balance.

Since his arrest, Mr. Crowell has been extremely concerned for his family and for himself.  He is concerned that his domestic partner, Paul, will experience financial strain while he is incarcerated, and potentially lose their house.  He is concerned that his business partner and he will lose their business, Aerodyne Works, just as it is starting to take off.  And, he is concerned for his own well-being while incarcerated.  First, because he is worried that he will not be provided the mental health treatment that he needs to remain stable.  He is equally concerned for his safety as he has never served any time in jail, save his short period of incarceration in Canada.  His therapist, Dr. Ramirez, believes that even this short period of

AO 72A
(Rev. 8/82)

incarceration has resulted in post-traumatic stress disorder.  Finally, he is worried about the consequences of being a registered sex offender after his release.

Mr. Crowell understands that there are consequences to his actions and he accepts full responsibility.  He is extremely remorseful and respectfully request that this Court consider his personal history and characteristics outlined in this memorandum and the attached exhibits when imposing its sentence.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court impose a sentence at the low end of the Sentencing Guidelines.  It is further requested that the Court recommend that Andrew Crowell serve his sentence at FCI Waseca in Minnesota.

DATED:     Buffalo, New York, November 29, 2007

Respectfully submitted,

  /s/Marianne Mariano
Marianne Mariano
Assistant Federal Defender
Office of the Federal Public Defender
300 Pearl Street, Suite 450
Buffalo, New York   14202
(716) 551-3341
marianne_mariano@fd.org

TO:   Marie P. Grisanti
       Assistant United States Attorney

       Kathleen A. Horvatits
       United States Probation Officer

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                            **07-CR-194-S**

ANDREW CROWELL,

           Defendant.

_____

### CERTIFICATE OF SERVICE

I hereby certify that on **November 29, 2007**, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

1.     Marie P. Grisanti
       Assistant United States Attorney
       Western District of New York
       138 Delaware Avenue, Federal Centre
       Buffalo, New York 14202

And, I hereby certify that I have e-mailed the document to the following non-CM/ECF participant(s).

1.     Kathleen A. Horvatits
       United States Probation Officer
       404 United States Courthouse
       68 Court Street
       Buffalo, New York 14202

                                                  s/Carol A. Steinbruckner
                                                  Carol A. Steinbruckner
                                                  Federal Public Defender's Office